## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1417** |
| **ADRIENNE LEZINA** | **SECTION "L" (2)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.      PROCEDURAL HISTORY**

Plaintiff, State Farm Fire and Casualty Company, issued a Businessowners Policy to Defendant, Adrienne Lezina, which contained uninsured motorist coverage.  The policy provides coverage for bodily injuries sustained while the insured was occupying either any non-owned vehicle being used in connection with the business or any vehicle owned by an employee used for personal or business purposes at the time of the accident.  Lezina filed a claim under the policy for damages sustained during a motorcycle accident that occurred on August 17, 2014.  State Farm seeks a declaratory judgment finding no coverage.  According to State Farm, Lezina is not entitled to coverage because her injuries did not occur while riding a vehicle owned by an employee, or a vehicle being used in connection with her business at the time of the accident.  Lezina filed an answer, contesting State Farm's assertion that the motorcycle was not being used in connection with her business at the time of the accident.

This case came on for a non-jury trial on February 22, 2016, and concluded later that day. The Court has carefully considered the testimony of the witnesses, the exhibits entered into evidence, and the entire record, and hereby enters the following findings of fact and conclusions of law.  To the extent that a finding of fact constitutes a conclusion of law, the Court adopts it as

such. And to the extent that a conclusion of law constitutes a finding of fact, the Court adopts it as such.

## II.      FINDINGS OF FACT

(1)

Plaintiff State Farm Fire and Casualty Company is an insurance company organized and existing under the laws of the State of Illinois.

(2)

Plaintiff State Farm Fire and Casualty Company issued a Businessowner's Policy insuring a Hair Salon, Day Spa and Barber Shop to Defendant, Adrienne Lezina dba Hair Gallery, bearing policy number 98-EZ-20309, with an effective date of September 1, 2013, and expiration date of September 1, 2014.  The policy was in effect on August 17, 2014.

(3)

The State Farm policy defines various terms:

Insured means "anyone for 'bodily injury' sustained while 'occupying', with your permission a 'non-owned auto' . . . is an insured, provided that such vehicle is being used in connection with your business at the time of the accident."

Non-owned auto is defined as

> any 'auto' you do not own, lease, hire, rent or borrow which is used
> in connection with your business.  This includes 'autos' owned by
> or registered to your 'employees,' partners or members "if you are
> a partnership or joint venture), 'memers' or 'managers' (if you are a
> limited liability company), 'executive officers' (if you are an
> organization other than a partnership, joint venture or limited

liability company), or members of their households, but only while

used in your business or your personal affairs.

(4)

Defendant Adrienne Lezina is a person of the full age of majority and resident of and domiciled in the Parish of St. Bernard, State of Louisiana.  Lezina is the sole shareholder of the Hair Gallery, a beauty salon located in Chalmette, Louisiana.

(5)

The Hair Gallery services clients residing throughout St. Bernard Parish, as well as neighboring parishes such as Plaquemines Parish.

(6)

As the proprietor of the Hair Gallery and a beautician, Lezina's clientele consists of individuals who seek both competent hair styling services as well as opportunities to socialize during the hair styling process.  The social component of Lezina's services includes discussing topics such as the character of the neighborhood where the client resides or works.  The social component of Lezina's work also includes developing client goodwill by participating in charitable events or donating funds to charitable groups.

(7)

Lezina and other stylists at the Hair Gallery sometimes do hair on location.  For weddings, this often entails traveling to a client's home or the site of wedding ceremony itself.

(8)

Prior to the accident, stylists at the Hair Gallery received calls from wedding parties inquiring about whether the Hair Gallery could provide hair-styling services for ceremonies held at the Stella Plantation, located in Plaquemines Parish, Louisiana.

(9)

On August 17, 2014, Lezina attended an Ice Bucket Challenge to benefit ALS.  The event was organized by a client, Nadine Coture.  The event was held at the home of another client, Yvette Robin, in Violet, Louisiana, which is in lower St. Bernard Parish.

(10)

Lezina was driven to the Ice Bucket Challenge by her boyfriend, Ron Besendorfer. Besendorfer is not an employee of the Hair Gallery.  Besendorfer picked Lezina up on his motorcycle, and agreed to return Lezina to the Hair Gallery later that evening so that she could finish the weekly cleaning of the Hair Gallery.  Lezina instructed Besendorfer to stop on the way to the Ice Bucket Challenge, so that they could pick up cleaning supplies for the shop as well as food for the charity event.

(11)

Lezina's attendance was at least partially motivated by professional concerns.  Lezina intended to "challenge" the Hair Gallery at Ms. Coture's event, and later host an Ice Bucket Challenge event of her own.  Lezina thought that hosting an Ice Bucket Challenge might develop goodwill in the community, and consequently attract clients through word of mouth.

(12)

Two individuals who attended Ms. Coture's Ice Bucket Challenge later became consistent clients of Lezina.  Lezina's decision to attend Ms. Coture's Ice Bucket Challenge was instrumental in obtaining said clients.

(13)

Lezina challenged the Hair Gallery, including by association the self-employed hair stylists who rent stations at the hair salon, to conduct an Ice Bucket Challenge.  Seconds later, Lezina

4

experienced the unique sensation of having a bucket of ice dumped over her head.

(14)

Following the conclusion of the ice bucket ceremonies, the charity event took on the character of a backyard barbecue and swim party.  Lezina and Besendorfer enjoyed the festivities for some time, but Lezina ultimately chose to leave early so that she could return to finish cleaning the Hair Gallery.

(15)

As Lezina and Besendorfer prepared to leave, Besendorfer noted that the weather was nice and proposed that the couple should take a motorcycle ride down to Plaquemines Parish.  The ride would be a significant detour from the Hair Gallery, but Besendorfer thought that a cruise on the open road would offer meaningful quality time for the pair.

Lezina accepted Besendorfer's invitation.  At trial, she testified that she did so because she was interested in more than feeling the wind in her hair.  Lezina had clients who lived and worked in the area, and she wanted to see how the area was recovering since Hurricane Isaac so she could discuss it with her clients.  Lezina also wished to see the Stella Plantation, so that she would be better prepared in future business negotiations regarding on-site hair styling at the venue if requested.

(16)

Lezina got on the vehicle and allowed Besendorfer to control the course of the motorcycle ride.  Lezina did not ask for directions to Stella Plantation, instruct Besendorfer to pull over at any points of interest along Highway 39, or set a hard cap on the length of the ride.  Lezina had no appointments or future commitments to do hair either at the Stella Planation or anywhere along Highway 39 at the time of the motorcycle ride.

(17)

Besendorfer cruised at a speed of approximately forty-five miles per hour on Highway 39 through Plaquemines Parish.  The riders observed the passing buildings and scenery.  Lezina did not object to this speed, despite the fact that a higher rate of speed would make it difficult to identify landmarks such as Stella Plantation.

(18)

Lezina and Besendorfer passed TECO Bulk Marine, a venue which employed relatives of Lezina's clientele.  Lezina did not ask Besendorfer to stop or slow down so that she could better inspect the point of interest.

(19)

Besendorfer and Lezina, unknowingly, passed Stella Plantation after approximately twenty minutes of driving.  Cruising at a speed of forty-five miles per hour, the couple either failed to see the sign for Stella Plantation or intentionally chose not to stop the ride.

(20)

Within the next fifteen minutes, the strip of colonial homes along Highway 39 came to an end, and Lezina and Besendorfer observed that they were entering a grassy, uninhabited area. Despite leaving civilization, Lezina did not signal to Besendorfer that she wished to discontinue the ride or express concerns that the pair may have driven past Stella Plantation.

(21)

At 6:37 p.m., approximately forty-five minutes after leaving the Ice Bucket Challenge, and after at least ten minutes of cruising through the wilderness, Besendorfer came upon a sharp turn in the road which had collected standing water.  Besendorfer lost control of his motorcycle; it skidded off the road and Lezina was injured in the crash.

(22)

Lezina seeks recovery from her insurer pursuant to the provisions of the uninsured

motorist section of the State Farm Policy.

### III. CONCLUSIONS OF LAW

(1)

Federal Courts are courts of limited jurisdiction.  "A party may neither consent to nor waive

federal subject matter jurisdiction."  *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir.

1999).  State Farm's declaratory action is brought pursuant to the Declaratory Judgment Act.  28

U.S.C. § 2201(a) (2012).  This Court has subject matter jurisdiction over this matter pursuant to

28 U.S.C. § 1332(a)(1), which provides original jurisdiction over citizens of different states when

the amount in controversy exceeds $75,000, exclusive of interests and costs.  In this case, neither

the domicile of the parties nor the amount in controversy is in dispute.

(2)

This accident occurred in the state of Louisiana, and the contract was a Louisiana contract.

A federal court sitting in diversity must apply the substantive law of the state in which it sits.  *See*

*Erie v. Tompkins*, 304 U.S. 64, 71–77 (1938).  The state of Louisiana would apply Louisiana law

to interpret the contract at issue.  Thus, the law of the state of Louisiana is the substantive law

applicable to this case.

(3)

Plaintiffs have the initial burden of proving the existence of a policy, that coverage exists

under the policy, and that a loss was occasioned by an event covered under the policy.  *See  Rafflee*

*v. Hurricane Sports, Inc.***,** 20 So. 3d 1202 (La. App. 3 Cir. 10/7/09), *Ho v. State Farm Mut. Auto*

*Ins. Co.*, 862 So. 2d 1278, 1281 (La. App. 3 Cir. 12/31/03).  It is uncontested that Lezina has met

the burden of proving the existence of a policy and that a loss occurred, but the parties dispute whether the accident at issue was an event covered by the policy.  The determinative issue is whether the non-owned vehicle was being used in connection with Lezina's business at the time of the accident.

(4)

In interpreting an "in connection with" clause of a non-owned auto claim in a Louisiana businessowners insurance policy, Louisiana law calls for the application of different tests depending on the circumstances of the accident.  If the policy is being interpreted in the context of the tortious acts of the policy-owner's employees, Louisiana courts routinely employ the "course and scope of employment" test.  *See Whetstone v. Dixon*, 616 So.2d 764 (La.App. 1 Cir. 1993); *Price v. Colony Ins. Co.*, 520 So.2d 964 (La. App. 3 Cir. 1987); *see also* La. Civ. Code Art. 2320. But where, as here, vicarious liability of an employee is not in issue, the Fifth Circuit has held that "in connection with" retains a broader meaning.  The *Ureta* court held that "in connection with" is synonymous with "to be engaged in [the policy-holder's] business" in cases such as the one at bar.  *See Ureta v. Thompson*, 892 F.2d 426, 429 (5th Cir. 1990).

The Court notes that the Louisiana Second Circuit may have indicated disagreement with *Ureta* by applying the "scope and course of employment" test where a policy holder sought coverage under an "in connection with" provision of a non-owned auto policy.  *See Gore v. State Farm Mut. Ins. Co.*, 649 So.2d 162 (La.App. 2 Cir. 1995).  A federal court sitting in diversity interprets state law as "the state Supreme Court would, based on prior precedent, legislation, and relevant commentary."  *See Cardenas v. United of Omaha Life Ins. Co.*, 731 F.3d 496, 499 (5th Cir. 2013) (quoting *F.D.I.C. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998); *see also In re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (noting that in the absence of an opinion

from the relevant state Supreme Court, a federal court sitting in diversity "must make an *Erie* guess"). The Louisiana Supreme Court has not ruled on the scope or meaning of "in econnection with" as used in such a policy. The Fifth Circuit was aware of Louisiana's use of the "scope and course of employment" test when it considered *Ureta*, but nevertheless held that "in connection with" was a broader term. *See Ureta*, 892 F.2d at 429, n.7 (parenthetically referencing the "scope and course of employment" test in citations to two separate Louisiana state court cases). The Court finds it highly relevant that the "course and scope of employment" test is primarily drawn from Article 2320 of the Louisiana Civil Code, which discusses vicarious liability. La. Civ. Code Art. 3230; *cf. In re: Katrina Canal Breaches Litig.*, 495 F.3d at 191 (stating that Louisiana's civilian methodology considers the code to be a primary source of law, and jurisprudence to be merely secondary). Vicarious liability is not at issue in this action. Therefore, the Court considers the Fifth Circuit's logic to be a more persuasive indicator or *Erie* guess of the Louisiana Supreme Court's position.

(3)

In the present case, it is the conclusion of the Court after hearing the testimony and observing the demeanor of the witnesses, that Lezina failed to satisfy her burden of proving that her loss was covered by the State Farm policy.

Lezina's ride down Highway 39 was only "in connection with" her business in terms of her policy if she was engaged with Hair Gallery business while she was driving down Highway 39. Lezina presented evidence at trial that her trip was Hair Gallery business for two separate reasons: (1) visiting Stella Plantation would allow her to scout a popular venue for on-site hair styling; and (2) driving down Highway 39 would benefit the social component of her business by

allowing her to better develop a rapport with her Plaquemines Parish clientele.[1]   The former

argument fails on the facts, and the latter fails as a matter of law.

(4)

Lezina fails to present sufficient evidence for the Court to find that viewing Stella

Plantation was Hair Gallery business at the time of the accident.  The evidence supports a finding

that the Hair Gallery received calls regarding the plantation.  Therefore, it is plausible that a

scouting trip to Stella Plantation would be "in connection with" Hair Gallery business.  Lezina

testified that she told Besendorfer that she would accept his motorcycle invitation in part so that

she could scout the location of Stella Plantation.  Besendorfer's account of the conversation

supported Lezina's testimony.  But this evidence is not sufficient for Lezina to meet her burden.

The evidence on the whole instead suggests that while Lezina found Stella Plantation

interesting, obtaining logistical information on the venue was not a significant part of the

excursion.  She had no appointments or pending requests to do business at the plantation.  Lezina

did not suggest the drive down Highway 39 to see Stella Plantation, or schedule an appointment

to tour the venue.  She merely acquiesced in the request of her significant other.  Lezina also failed

to ensure that visiting Stella Plantation would be more than an idle possibility—she did not ask for

directions, or request that her escort slow down so that she could identify which of the many

colonial homes along Highway 39 was Stella Plantation.  More importantly, the site of Stella

Plantation was long past at the time of the accident, and there was no evidence of concern on the

---

[1] The Court notes that Lezina made a concerted effort to characterize the Ice Bucket Challenge as Hair Gallery business.  The Court agrees with Lezina that she was on Hair Gallery business at Ms. Coture's Ice Bucket Challenge.  The proof is in the pudding—she netted two new clients by treating her friend's social function as a networking event.  This is the type of activity "in connection with" a business contemplated by *Ureta*.  *See Ureta v. Thompson*, 892 F.2d 426, 429 (5th Cir. 1990).  Unfortunately for Lezina, the motorcycle ride did not occur on the way to the Ice Bucket Challenge, and her stated justifications for the detour to Plaquemines Parish are insufficient to trigger recovery under the State Farm policy.

part of Lezina that Besendorfer may have driven past the venue.  Lezina rode at least ten minutes beyond Highway 39's strip of colonial homes without attempting to assert any control over her escort.  Her decision to remain silent indicates that at the time of the accident she was merely along for the ride, or, at best, engaging with the scenery for the purpose of sharing the story with her clientele.  Therefore, Lezina cannot meet her burden by contending that she had a business purpose of scouting Stella Plantation at the time of the accident.

(5)

Lezina cannot rely on evidence that the motorcycle ride was taken in connection with the social component of her services as a hairdresser, because the "in connection with" language of the policy is not broad enough to encompass that aspect of her business.

When interpreting a contract, the Supreme Court of Louisiana has explained,

> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. . . .  However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences.

*Clovelloy Oil Co., LLC v. Midstates Petroleum Oc., LLC*, 2012-2055, p. 5-6 (La. 3/19/13); 112 So.3d 187, 192 (citations and quotations omitted).  The plain meaning and absurdity canons as articulated in *Clovelly* are to be employed before resorting to other tools of construction, such as construing the terms of an insurance contract against the insurer.  *See Consolidated Companies, Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 426 (5th Cir. 2010).

(6)

The evidence supports a finding that there is a significant social component to Lezina's work as a hairdresser. While no client will forgive poor service in exchange for a gift basket, it is common knowledge that buyers respond well to a personal touch. Just as a doctor works to perfect his or her bedside manner, hair stylists strive to develop their banter and client rapport. Lezina provides sufficient evidence to prove that the social component of her work is even more critical than that of the average hair stylist. The testimony presented at trial overwhelmingly supports a finding that the Hair Gallery is a hub of social activity for Lezina's community in addition to being a reputable establishment to get a hair-do.

(7)

The term "in connection with" as presented in the State Farm policy does not encompass the business purpose of developing topics of conversation which may be of interest to a hair stylist's clients. Lezina testified at trial that part of her rationale for accepting the motorcycle ride was to view Plaquemines Parish so that she could better understand the trials and travails of Plaquemines citizens. The Court finds this testimony reliable. However, this testimony merely conveys an interest in better establishing a rapport with clients by engaging in a relatable activity, and this activity is outside of the scope of the policy.

(8)

Lezina's testimony indicates that she views the social component of her work for the Hair Gallery as being extremely broad. For example, Lezina testified that the week prior to the present trial, she saw a film entitled "Kinky Boots." She stated that she intended to discuss the film with her clients, and she characterized watching the movie as a business activity similar to her stated business activity of viewing Plaquemines Parish. The Court finds it legally troubling that Lezina considers both of these activities Hair Gallery business. The consequences of interpreting the State

12

Farm policy to cover such a broad characterization of developing rapport with one's clients is too great for the language to bear.

(9)

Developing a topic of conversation which may be of interest to untargeted, unspecified clients does not fall within the scope of "in connection with" as interpreted in *Ureta*. *See Ureta*, 892 F.2d at 429. The Fifth Circuit's holding suggests that this Court should evaluate whether Lezina was on Hair Gallery business when analyzing if the motorcycle accident was within the scope of the State Farm policy. Under the plain meaning of "in connection with," Lezina's goal of developing client rapport by viewing Plaquemines Parish might benefit the Hair Gallery. However, Louisiana law indicates that contracts should be interpreted to avoid absurdity, and the Court finds this construction of the policy would lead to absurd results. The profits of the Hair Gallery are partially dependent on Lezina's ability to relate to her clients, and *Ureta* explicitly provides that client development or targeted networking may be an activity within the scope of the phrase "in connection with." *See id.* at 429 (finding that a doctor's stated intention of networking at a birthday party may have placed his attendance within the scope of "in connection with" for purpose of a Business Auto Policy). But the type of client development described by Lezina is too broad to be covered. If a destination-less ride through an area of interest to clients is within the scope of the policy, then it follows that a trip to see a movie which may be of interest to clients is also within the scope of the policy. Or perhaps if Lezina contracted laryngitis, a trip to the doctor would be within the scope of the policy, because the social element of the Hair Gallery's business is dependent upon her voice. Lezina's proposed interpretation of the policy fails, because it reads "in connection with" so broadly as to encompass virtually every relatable, interesting activity in her daily life as the business of the Hair Gallery. Therefore, Lezina cannot recover.

13

**IV. SUMMARY**

On the basis of the above Findings of Facts and Conclusions of Law, the Court finds that Defendant Adrienne Lezina is not entitled to Uninsured Motorist Coverage under the Businessowners Policy issued by State Farm, because she did not sustain bodily injury while occupying a non-owned auto being used in connection with Hair Gallery business at the time of the accident, nor did she sustain bodily injury while occupying a non-owned auto owned by an employee being used for personal or business affairs at the time of the accident.

New Orleans, Louisiana this 7th day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE